IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

GLENN S. RHODES,                    *
                                    *
        Plaintiff,                  *
                                    *
        v.                          *        CV 121-127
                                    *
DANIEL CRAIG; ADAM LAND;            *
BARBARA CLARIDGE; and SHAWN         *
HAMMOND,                            *
                                    *
        Defendants.                 *
                                _____

**O R D E R**
                                _____

Before the Court is Defendant Shawn Hammond's motion to
dismiss (Doc. 17), Defendant Adam Land's motion to dismiss (Doc.
18), Defendant Daniel Craig's motion to dismiss (Doc. 20), and
Defendant Barbara Claridge's motion to dismiss (Doc. 48). Also
pending are numerous of Plaintiff's motions including his: motion
to review (Doc. 58), motion for extension of time to serve
Defendants (Doc. 63), and motion for review of Rooker-Feldman
doctrine (Doc. 69). The Court addresses the pending motions below.


## I. BACKGROUND

Plaintiff, proceeding *pro se*, filed suit on August 23, 2021
against the above-named Defendants. (Compl., Doc. 1-2.) The
Complaint is somewhat hard to follow as Plaintiff rehashes numerous
grievances in connection with his Columbia County divorce

proceedings that took place in 2018 between him and his now ex-wife. (Id.)  In the underlying divorce, Plaintiff was represented by both Defendant Hammond and Defendant Claridge at various points in the proceedings.  (Doc. 17-1, at 1-2; Doc. 48, at 3.)  Defendant Land represented Michelle Miller-Rhodes, Plaintiff's ex-wife. (Doc. 18, at 2.)

Plaintiff asserts his basis for jurisdiction as 42 U.S.C. § 1983.  (Compl., at 2.)  He states "I wholeheartedly beg for a request of an investigation into every impractical case pertaining to Columbia County Court proceedings where the opposing party was given impunity to commit countless violations of legal standards." (Id.)  He then recounts the actions that resulted in a divorce decree he dislikes.  (Id. at 2-6.)

Specifically, Plaintiff states he is bringing a Bivens claim "against Judge Daniel Craig[,] a federal judicial officer, pursuant to Title 28 U.S. Code § 1331" for violations of his First, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment rights. (Id. at 7-8.)  He also makes numerous allegations against Defendants Land, Claridge, and Hammond regarding things they did, or did not do, during the underlying divorce.  (Id. at 12-19.) "This case was based on illegal arguments of known false representation of laws by the [Defendants] presented to [Judge Craig]."  (Id. at 12.)  Plaintiff argues Defendant Land "consistently and viciously defamed [his] character and degraded

[his] career." (Id. at 14.) Additionally, he "conducted fraudulent acts under the substantive or procedural law of the applicable jurisdiction and did deceive[] the courts by knowingly submitt[ing] false [information] . . . [and] knowingly counseling or assisting a client to commit a perjury fraud and postal crimes." (Id. at 13.) Plaintiff also alleges his own attorneys, Defendants Claridge and Hammond, "both failed to act with reasonable diligence and promptness in representing [him]," "both falsified attorney fees and charged for services they didn't provide," and essentially refused to submit his evidence, request authentication, or do anything else he wanted done in the divorce proceedings. (Id. at 14.) Plaintiff asserts "neither of these lawyers acted with commitment and dedication to my interests and reviewing the court records will show there was a massive lack of zeal in advocating upon my behalf." (Id.)

In terms of relief, Plaintiff states he "hope[s] the courts review each judicial personnel and agency to determine why they performed unlawful acts of allowing unauthenticated, illegal and dishonest material throughout the entire Georgia judicial process of these cases." (Id. at 17.) He "request[s] that the higher court review these claims and seriously evaluate each of the claims with-in this request and many additional ones that were not submitted with this request, for each were a major violation of criminal laws or proceedings and break the foundation of judicial

confidence in the civilian sector." (Id. at 17-18.) Each Defendant moves to dismiss for various reasons. The Court addresses their motions below.

## II. LEGAL STANDARD

A motion to dismiss a complaint does not test whether the plaintiff will ultimately prevail on the merits of the case. Rather, it tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984). Therefore, the Court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). The Court, however, need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although there is no probability requirement at the pleading stage, "something beyond [a] mere possibility . . . must be alleged."

4

Twombly, 550 U.S. at 557-58 (citing Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005)). When, however, based on a dispositive issue of law, no construction of the factual allegations of the complaint will support the cause of action, dismissal is appropriate. See Exec. 100, 'Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991).

### III. DEFENDANTS' MOTIONS TO DISMISS

Each Defendant asserts various reasons for dismissal so the Court will address the individual motions in turn.

### A. Defendant Hammond's Motion to Dismiss (Doc. 17)

Defendant Hammond, one of Plaintiff's attorneys during the underlying divorce, moves to dismiss Plaintiff's Complaint because it (1) fails to state a claim, (2) violates the Rooker-Feldman doctrine, and (3) is an impermissible shotgun pleading.[1] (Doc. 17, at 1.) Defendant Hammond argues that Plaintiff's claims fail under § 1983 because he was not acting under color of state law or as a state actor; instead, Plaintiff's claims are simply ones for professional malpractice. (Doc. 17-1, at 5-7.) Defendant Hammond argues he "merely represented Plaintiff in his divorce from

---

[1] Defendant Hammond does not assert insufficient service as a basis for dismissal in his motion. Under Federal Rule of Civil Procedure 12(h)(1), "a party is deemed to have waived any objection to personal jurisdiction or service of process if the party makes a pre-answer motion under Rule 12 and fails to include such objections in that motion." Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990) (citation omitted). Therefore, Defendant Hammond has waived any objection to service.

Plaintiff's ex-wife" and Plaintiff fails to plead any facts showing Defendant Hammond acted under color of state law. (Id. at 7.) Further, he argues that under Rooker-Feldman, this Court has no authority to exercise appellate review of a divorce case. (Id. at 10-11.) And finally, he argues the Complaint is simply filled with incoherent claims of general malfeasance, making it a shotgun pleading. (Id. at 8-9.)

### 1. Rooker-Feldman Doctrine

First, Defendant Hammond argues that "Plaintiff's Complaint falls squarely within the purview of the Rooker-Feldman doctrine, and unmistakably prohibits Plaintiff from litigating the instant action." (Id. at 10.) In response, Plaintiff argues the Rooker-Feldman doctrine does not apply "because the state's cases have concluded and Younger abstention, federal habeas corpus of the higher courts is the procedural process going forwarded [sic] once a state court case is concluded." (Doc. 32, at 18.) He argues the Defendants invoking this doctrine are simply attempting "to hide false statements and documents (or lack of legal documentation) by the [D]efendants to the appellate and higher courts to cover-up the misconduct actions and illegal rulings" and "are requesting the DOJ overlook the actual federal laws and amendments of the constitution which were violated by the [D]efendants." (Id.) Plaintiff believes his "[C]omplaint falls squarely within the purview of 'Younger abstention, federal habeas

corpus' which unmistakably authorizes the plaintiff to litigate the instant actions." (Id. at 19.)

Defendant Hammond replied in support of his motion, arguing Plaintiff incorrectly believes Younger v. Harris, 401 U.S. 37 (1971) trumps or supersedes the Rooker-Feldman doctrine. (Doc. 43, at 6.) Further, Plaintiff's filings "make vividly clear that Plaintiff wishes for this Court to review and entertain an appeal of Plaintiff's underlying divorce case that was decided in the Superior Court of Columbia County, Georgia." (Id. at 7.)

"The Rooker-Feldman doctrine 'makes clear that federal district courts cannot review state-court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court.'" Figueroa v. Merscorp, Inc., 766 F. Supp. 2d 1305, 1315-16 (S.D. Fla. 2011), aff'd 477 F. App'x 558 (11th Cir. 2012) (quoting Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009)). The doctrine "applies both to federal claims raised in the state court and to those 'inextricably intertwined' with the state court's judgment." Pugh v. Balish, No. CV 413-219, 2013 WL 6145302, at *3 n.4 (S.D. Ga. Nov. 21, 2013), report and recommendation adopted, 2013 WL 6665384 (S.D. Ga. Dec. 17, 2013), aff'd, 564 F. App'x 1010 (11th Cir. 2014) (quoting Casale, 558 F.3d at 1260). A claim is inextricably intertwined "if it would 'effectively nullify' the state court

judgment or if it 'succeeds only to the extent that the state court wrongly decided the issues.'" Id.

Plaintiff repeatedly states "the plaintiff's DOJ request is to review and investigate the conduct of judicial personnel associated with this case and ensure all legislative procedures were followed in accordance with written laws and protocol." (Doc. 32, at 19.)  He is asking this Court to conduct a review of the state court action and the decisions made throughout the underlying divorce proceedings.  Further, Plaintiff specifically outlines each of the state judicial actions starting with a preliminary hearing in November 2018 and ending with his arrest, or "false imprisonment," in 2021 and the wrongdoings he believes took place during each one.  (Id. at 20-22.)  Each action he raises was a part of his underlying divorce, including his appeal and his arrest for failure to comply with the divorce decree.  (Id.)  Therefore, Plaintiff is certainly seeking this Court's review of the Superior Court of Columbia County's decisions.

Under Rooker-Feldman, "'federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts.'"  Burns v. Branham, No. CV 408-205, 2009 WL 113454, at *1 (S.D. Ga. Jan. 16, 2009) (quoting Weekly v. Morrow, 204 F.3d 613, 615 (5th Cir. 2000)).  Plaintiff argues that the Younger doctrine permits him to bring this litigation; however, he misinterprets Younger.  (Doc.

32, at 18.)   Plaintiff also relies on Exxon Mobil Corp. v. Saudi Basic Indus. Corp. for holding that Rooker-Feldman is a narrow jurisdictional bar to litigation.   (Id. (citing Exxon Mobil, 544 U.S. 280 (2005)).   Plaintiff's reliance on Exxon Mobil and Younger as a basis for his allegations is mistaken.   In Exxon Mobil, the Supreme Court held that Rooker-Feldman "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."   544 U.S. at 284.   This is exactly the type of case Exxon described; Plaintiff is a state-court loser complaining of injuries caused through his divorce judgment long before this district court case was ever filed.

In defense against this clear legal standard, Plaintiff asserts that he brings many claims, not just those which have to do with the actual divorce decree.   (Doc. 32, at 19.)   He wants to hold the attorneys and judge accountable for the "wrongdoings" they were a part of during his Superior Court of Columbia County case.   (Id. at 19-22.)   Plaintiff references illegally authenticated documents, hearsay statements being allowed, self-authenticated evidence from unknown sources, mediation without allowing evidence from Plaintiff, exclusion of relevant evidence, Columbia County's failure to provide transcripts, illegally

cancelled court hearings, false documents submitted by the judge, an appeal rejected due to a fraudulent agreement between the Court of Appeals and Columbia County judicial personnel, unethical and illegal rulings of the Columbia County judge, and many other misdoings.   (Id.)   All of Plaintiff's specifically enumerated wrongs are related to the underlying divorce, and this Court lacks appellate jurisdiction to review, modify, or nullify that decision or the actions that took place during those proceedings.   See Burns, 2009 WL 113454, at *1 (citation omitted).   Based on this, Defendant Hammond's motion to dismiss (Doc. 17) is **GRANTED** as it pertains to Plaintiff's Complaint seeking review of the underlying divorce.

### 2. Statutory Requirements of 42 U.S.C. § 1983

The Court has dismissed Plaintiff's Complaint as it seeks review of a state court judgment; nevertheless, the Court will also address Defendant Hammond's argument for dismissal in relation to § 1983. Plaintiff's Complaint pleads the basis for federal jurisdiction is § 1983. (Compl., at 2.) Defendant Hammond moves to dismiss for failure to state a claim under § 1983 because he did not act under color of state law. (Doc. 17-1, at 5-7.) In response, Plaintiff argues that "Defendant Hammond physically did not initiate the documentations for the criminal contempt of court . . . however, his conduct and lack of legal compliance indirectly assisted with the elimination of [P]laintiff's constitutional

[rights]." (Doc. 32, at 12.) Specifically, actions leading to Plaintiff's detainment, arrest, and confinement without justification. (Id.) Plaintiff goes on to cite <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and allege material exculpatory evidence has been suppressed. (Id. at 12-13.)

Preliminarily, there are no allegations that Defendant Hammond acted as a prosecutor or on behalf of the state in any of the underlying actions; therefore, <u>Brady</u> is not applicable. <u>Brady</u> violations require a defendant, in a criminal case, prove the government possessed evidence favorable to the defense, suppressed such evidence, and the defendant suffered prejudice as a result. <u>United States v. Schier</u>, 438 F.3d 1104, 1106 n.1 (11th Cir. 2006). This is irrelevant to Defendant Hammond or this action.

For purposes of § 1983, private parties can only be considered state actors in three circumstances. <u>See</u> <u>Rayburn ex rel. Rayburn v. Hogue</u>, 241 F.3d 1341, 1347 (11th Cir. 2001). One of the following three conditions must be met:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[]" ("nexus/joint action test").

Id. (alterations in original) (quoting NBC, Inc. v. Commc'ns Workers of Am., 860 F.2d 1022, 1026-27 (11th Cir. 1988)).

Plaintiff does not allege Defendant Hammond meets any of the conditions outlined above. Defendant Hammond is a private attorney who represented Plaintiff and although the outcome was unfavorable, Plaintiff does not identify any way Defendant Hammond's actions made him a state actor. Plaintiff seems to suggest Defendant Hammond could have acted in concert with Judge Craig; however, to succeed on such a claim, "the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons." Davis v. Self, 547 F. App'x 927, 934 (11th Cir. 2013) (quoting Harvey v. Harvey, 949 F.2d 1127, 1133 (11th Cir. 1992)). Plaintiff simply provides vague and conclusory allegations that amount to nothing more than speculation, insufficient to state a claim against Defendant Hammond. See id. (citing Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .")). Plaintiff has failed to allege anything that would transform Defendant Hammond from a private individual to a state actor; therefore, he has no basis to sue under § 1983.

Based on the foregoing, Plaintiff's claims against Defendant Hammond are **DISMISSED WITH PREJUDICE.**

**B. Defendant Land's Motion to Dismiss (Doc. 18)**

Defendant Land moves to dismiss Plaintiff's claims against him under Rules 12(b)(5) and 12(b)(6) for insufficient service of process and failure to state a claim.  (Doc. 18, at 3.)

1. Insufficient Service of Process

First, Defendant Land moves to dismiss because he was not personally served, nor was a copy of the summons and Complaint left at his dwelling.  (Id. at 4.)  Instead, the summons and Complaint were delivered to a legal assistant, Tonnia Debord, at his office, and she was not an agent authorized by appointment or law to receive service of process for Defendant Land.  (Id. at 5.)  Plaintiff's filing supports Defendant Land's statement that service was made upon Tonnia Debord, listed as a paralegal.  (Doc. 7, at 10.)

Pursuant to Federal Rule of Civil Procedure 4, an individual may be served by: (1) following the law for the state in which the district court is located (i.e. Georgia); (2) delivering a copy of the summons and complaint to an individual personally; (3) leaving a copy of the summons and complaint at an individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (4) delivering a copy of the summons and complaint to an agent authorized by appointment or law to receive service.  FED. R. CIV. P. 4(e).  Neither federal nor Georgia law permit service of process by leaving a copy of the summons and

13

complaint with an individual at the defendant's place of business who is not authorized to accept service.  See Ochwangi v. Direct Gen. Ins. Co., No. 1:08-CV-004, 2008 WL 11470713., at *5 (N.D. Ga. Mar. 31, 2008) (citing Lowe v. Hart, 157 F.R.D. 550, 552 (M.D. Fla. 1994); Hudgins v. Bawtinhimer, 395 S.E.2d 909, 912 (Ga. Ct. App. 1990)).

"Because service of process is a jurisdictional requirement, the Court lacks personal jurisdiction over a defendant who has not been properly served."  King v. Marcy, No. 2:17-cv-112, 2019 WL 691782, at *3 (S.D. Ga. Feb. 19, 2019) (citing Pardazi, 896 F.2d at 1317).  When proper service is challenged, Plaintiff has the burden of establishing that service of process was proper.  Lazaro v. United States Dep't of Agric., 186 F. Supp. 2d 1203, 1217 (M.D. Fla. 2001) (citing Binder v. Sekulow, 106 B.R. 313, 315 (N.D. Ga. 1989)).  Plaintiff responded to Defendant Land's motion to dismiss; however, the response is rambling and difficult to understand and mentions nothing about the sufficiency of service upon Defendant Land.  (See Doc. 33.)  Pursuant to the Local Rules, that means Defendant Land's motion to dismiss is unopposed and shall be granted.  See L.R. 7.5, SDGa.  Further, there are no allegations that Ms. Debord was an authorized agent for Defendant Land so leaving a copy of the summons and Complaint with her was insufficient.

When service of process has been insufficient, a complaint is subject to dismissal. See FED. R. CIV. P. 12(b)(5); Tomlin v. White Dairy Ice Cream Co., 13 F. Supp. 2d 1354, 1356 (S.D. Ga. 1997) ("Where there has been no legal service on the defendant . . . the court has no jurisdiction to enter any judgment in the case unless it be one dismissing the case for lack of jurisdiction." (citation omitted)). Plaintiff's status as a *pro se* litigant is not an excuse for failure to serve Defendant in accordance with the Federal Rules of Civil Procedure. Anderson v. Osk Kosh B'Gosh, 255 F. App'x 345, 348 n.4 (11th Cir. 2006) (citing McNeil v. United States, 508 U.S. 106, 113 (1993)). Based on the Court's finding that Defendant Land was not properly served, all claims against him are **DISMISSED WITHOUT PREJUDICE.**

2. Additional Grounds for Dismissal

Having found service insufficient and dismissing the claims against Defendant Land without prejudice, the Court will not address Defendant Land's other grounds for dismissal.

C. **Defendant Craig's Motion to Dismiss (Doc. 20)**

Defendant Craig moves to dismiss Plaintiff's Complaint based on: (1) lack of personal jurisdiction; (2) the Eleventh Amendment and sovereign immunity; (3) absolute judicial immunity; and (4) the Rooker-Feldman doctrine. (Doc. 20, at 1.) Plaintiff responded to Defendant Craig's motion in the same way he did to every Defendant's motion: by rambling about unrelated doctrines such as

<u>Brady v. Maryland</u>, failing to address Defendant's grounds for dismissal, and rehashing the same "facts" he asserted in his Complaint.[2]   (<u>See</u> Doc. 27.)

### 1. Insufficient Service of Process

Defendant Craig first moves to dismiss Plaintiff's Complaint for lack of personal jurisdiction, arguing he has not been properly served.   (Doc. 20-1, at 4.)   He asserts there is no proof of service on the docket and although a copy of the Complaint was delivered to him, a summons was not served with the Complaint. (<u>Id.</u> at 5.)   Further, more than 90 days have passed since Plaintiff filed his Complaint, so he is outside the allotted time to complete service.   (<u>Id.</u>)   Notably, Plaintiff did not respond to this ground for dismissal in his filed rejection order.   (<u>See</u> Doc. 27.)   The only certificate of service filed on the docket for Defendant Craig states that he was not located and includes some receipts showing Plaintiff at least paid for an attempt of service on Defendant Craig.   (Doc. 7, at 5, 8, 14.)

Further, the docket reflects that the Clerk did not even issue Plaintiff the summons until February 4, 2022.   (Doc. 61.)   That same day, Plaintiff filed his motion for extension of time to serve

---

[2] The Court notes that in this filing, as well as most of Plaintiff's filings, he references the fact that all Defendants are withholding evidence and refusing to answer his interrogatory questions and discovery requests.   (<u>See</u> Doc. 27, at 2.)   Upon the filing of the currently pending motions to dismiss, the Court stayed all discovery in this action pending resolution of the motions; therefore, Defendants have no obligation to comply with Plaintiff's discovery requests at this time.   (<u>See</u> Docs. 37, 54.)

Defendants (Doc. 63), which the Court addresses below.   But since the summons were not issued, Plaintiff could not have served it on Defendant Craig.

Federal Rule of Civil Procedure 4(c) provides: "A summons must be served with a copy of the complaint.   The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service."   FED. R. CIV. P. 4(c)(1).   Here, Plaintiff neglected to have summons issued, even after the Court ordered Plaintiff on November 23, 2021 to explain the reasons for his delay in service and why this case should not be dismissed. (Doc. 6.)   Plaintiff did not provide any justification for the delay, and made no mention of his lack of summons, instead providing receipts showing he paid for service attempts.   (Doc. 7.)   If there was any question of how to properly accomplish service, the Court **twice** cautioned it was Plaintiff's responsibility to determine which method of service is appropriate and, as a courtesy, the Clerk of Court **twice** provided him with a copy of Rule 4.   (Docs. 3, 3-1, 6.)   It was Plaintiff's responsibility to properly effect service.   Kammona v. Onteco Corp., 587 F. App'x 575, 578 (11th Cir. 2014) (*per curiam*) (citing Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007) (*per curiam*)).   Even after the Court provided Plaintiff the tools, instructions, and information needed for proper service, he still

failed to comply with the Federal Rules of Civil Procedure.  While the Court recognizes that Plaintiff is proceeding *pro se*, he is still required to follow the Federal Rules of Civil Procedure the same way as all litigants appearing in this Court.  See Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a *pro se* . . . litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure.")

The Court will not allow Plaintiff to move forward with his case when, even after it provided instructions and warnings, Plaintiff acted with blatant disregard for the Rules.  Plaintiff did not address his failure to properly serve when responding to the motions to dismiss, and then waited a month and half before seeking an extension of time to presumably fix his mistakes.  (See Docs. 27, 62.)  Therefore, the Court finds Plaintiff failed to properly serve Defendant Craig and the claims against him are **DISMISSED WITHOUT PREJUDICE.**

### 2. Additional Grounds for Dismissal

Having dismissed all claims against Defendant Craig without prejudice for lack of proper service, the Court will not analyze his additional grounds for dismissal.

## D. Defendant Claridge's Motion to Dismiss (Doc. 48)

Finally, Defendant Claridge also moves to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6).  (Doc. 48, at 1.)

### 1. Insufficient Service of Process

Defendant Claridge's first argument for dismissal mirrors that of Defendant Craig — she was furnished with a packet of documents by a Richmond County Deputy Marshal on December 9, 2021 and there was no summons included. (Id. at 5.) Instead, her service packet contained a document identifying civil action number CFD61 from the Magistrate Court of Richmond County, as well as over 200 pages of interrogatory questions and discovery requests for all Defendants. (Id. at 6; Docs. 48-2, 48-3, 48-4.) Plaintiff responded to Defendant Claridge's motion by arguing the service packets were given to law enforcement prior to the 90 days, meaning service was timely, and also arguing that summons can be amended. (Doc. 56, at 7.) Plaintiff offers nothing to explain why a summons was not included with Defendant Claridge's packet of documents in December 2021 or to prove that Defendant Claridge was properly served.

As noted above, when service is challenged, Plaintiff has the burden to demonstrate that service had been properly made. See Lazaro, 186 F. Supp. 2d at 1217. Plaintiff has failed to prove that a summons was delivered to Defendant Claridge as required under Rule 4; therefore, the Court finds service upon Defendant Claridge was not properly effected and the claims against her are **DISMISSED WITHOUT PREJUDICE.**

19

## 2. Additional Grounds for Dismissal

Once again, the Court has found that service was not properly made upon Defendant Claridge; therefore, the Court does not have jurisdiction over this Defendant and will not analyze her additional grounds for dismissal.

## IV. EXTENSION OF TIME TO COMPLETE SERVICE

On February 4, 2022, Plaintiff filed a motion requesting an extension of time to complete service "due to adverse unforeseen situations." (Doc. 63, at 1.) Plaintiff avers that he has taken actions "in an attempt to be [in] compliance with the laws and policies of the court to the best of his ability." (Id. at 2.) Further, he represents that his mother passed away September 27, 2021 while he was preparing the Defendants' service packets and he subsequently spent two months in Indiana finalizing her arrangements. (Id. at 2-3.) He then argues he was not given due process during the lower court hearings and that the Columbia County government website has been changed and contains misleading misinformation. (Id. at 3.) Defendant Craig filed an opposition to this motion. (Doc. 65.)

While unfortunate that Plaintiff had to undergo the loss of his mother during the pendency of this action, this does not justify his non-compliance with the Federal Rules of Civil Procedure. As the Court pointed out above, when service has been

raised as an issue, Plaintiff has the burden of proving proper service has been made. Plaintiff did not do that, and he did not even attempt to justify his lack of compliance with the Federal Rules. Only now, at the eleventh hour, does Plaintiff try to raise a "justification" for his non-compliance and his failure to effect proper service. On November 23, 2021, the Court ordered that Plaintiff had fourteen days to explain the reasons for his delay in service. (Doc. 6.) Plaintiff mentioned nothing about his mother, and instead responded on December 2, 2021 with copies of receipts and no other justification. (Doc. 7.) Plaintiff filed over 17 different documents on the docket between the Court's November 23, 2021 Order (Doc. 6) and this request on February 4, 2021 to extend the service deadline (Doc. 63). (See Docs. 7-12, 23, 25-29, 32-33, 39, 50, 52.) None of these filings answered the Court's inquiry regarding Plaintiff's delay in service. Therefore, while sympathetic that he was dealing with his mother's death, the Court does not believe that Plaintiff was unable to proceed with his case during that time; he simply filed what he wanted and ignored the Federal Rules and this Court.

Based on these conclusions, the Court finds no reasonable justification or good cause to grant an extension of time to complete service. In November 2021 the Court allowed Plaintiff additional time, but he failed to take advantage of it and failed

to offer justification.   Therefore, Plaintiff's motion for extension of time to complete service (Doc. 63) is **DENIED**.

### V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant Shawn Hammond's motion to dismiss (Doc. 17), Defendant Adam Land's motion to dismiss (Doc. 18), Defendant Daniel Craig's motion to dismiss (Doc. 20), and Defendant Barbara Claridge's motion to dismiss (Doc. 48) are **GRANTED** and Plaintiff's motion for extension of time to complete service (Doc. 63) is **DENIED**.   The case is **DISMISSED WITH PREJUDICE** as to Defendant Hammond and **DISMISSED WITHOUT PREJUDICE** as to Defendant Claridge, Defendant Land, and Defendant Craig.   The **CLERK** is **DIRECTED** to **TERMINATE** all other pending motions and deadlines and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this _17th_ day of May, 2022.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA